MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:     2016 ME 104
Docket:       Ken-15-339
Argued:       April 7, 2016
Decided:      July 12, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.


MARC G. MOSHER

v.

STATE HARNESS RACING COMMISSION


HUMPHREY, J.

[¶1]     Marc Mosher appeals from a judgment of the Superior Court (Kennebec County, *Mullen, J.*) affirming the denial by the State Harness Racing Commission of his application for licensure as a driver/trainer for horse harness racing in Maine.  The Commission denied his application based on its conclusion that the reciprocal disciplinary action provision of the harness racing licensing statute, 8 M.R.S. § 283 (2015), prohibited the issuance of a Maine license because he had previously been denied a license in New York, despite the fact that New York had subsequently rescinded that license denial.  We conclude that the Commission erred, vacate the judgment, and remand for further proceedings.

## I. BACKGROUND

[¶2]   The following facts are undisputed.  On April 11, 2014, Mosher applied to the Commission to renew his driver/trainer license.[1]  On his application, Mosher indicated that he had been suspended or barred by a racing authority in New York.  In a letter dated May 28, 2014, the Commission informed Mosher that it was preliminarily denying his application because he had previously submitted an application to the New York State Racing and Wagering Board that had been denied in 2011.  The Maine Commission quoted title 8 M.R.S. § 283, which provides:

**Reciprocal disciplinary action**

The department [of Agriculture, Conservation and Forestry] shall obtain current listings from other jurisdictions of persons in harness racing occupations regulated by the commission who have been refused a license or who have had their license revoked or suspended. The commission shall refuse to license or shall suspend the license of any person who has been refused a license or who has had that person's license revoked or suspended in another jurisdiction until notification from the jurisdiction that refused to license or suspended or revoked the license of the person that the person is again eligible for licensing in that jurisdiction.[2]

---

[1]  The record does not disclose what types of licenses are issued by the State Harness Racing Commission or provide any information as to the technical differences between or among the various licenses.

[2]  The Commission also quoted Chapter 17, Section 21, of the Harness Racing Rules, Penalties of Other Jurisdictions Enforced, which states, "All penalties imposed by any Racing Commission in any racing jurisdiction shall be recognized and enforced by this Commission unless application is made for a hearing before this Commission wherein the applicant must show cause as to why such penalty should not be enforced against him/her in this state."

[¶3] On June 4, 2014, Mosher's counsel sent the Commission a letter asking it to reconsider the preliminary denial and enclosing a letter to Mosher from the New York State Gaming Commission, the successor agency to the New York State Racing and Wagering Board, dated March 25, 2014, which states:

> Your appeal of the New York State Gaming Commission's denial on December 16, 2011 of your New York 2011 groom license application has been pending for a substantial time, as you know. An appeal hearing has been scheduled, adjourned, rescheduled and cancelled on multiple occasions.
>
> The Commission has determined, in light of this and the lengthy passage of time since you last applied to participate in New York racing, *simply to rescind its license denial and to dismiss your appeal*.
>
> Please be advised that this administrative action . . . shall not prevent the Commission from taking action against you for any misconduct subsequent to such license denial, and does not infer or imply the future outcome with respect to any newly filed occupational license application.

(Emphasis added.)

[¶4] In a letter dated July 7, 2014, the Maine Commission again preliminarily denied Mosher's application, citing section 283. Mosher appealed the preliminary denial and requested a hearing before the Commission.

[¶5] On August 14, 2014, the Commission met in public session to hold a hearing on Mosher's application, pursuant to 8 M.R.S. § 279-A (2015) and Chapter 21 of the Commission rules. The Commission's Executive Director testified that, upon receiving Mosher's application and following normal

4

procedures, he consulted the website of the United States Trotting Association and learned that New York had denied Mosher's application for a groom's license. The Commission also proffered, and the hearing officer admitted, exhibits showing that Mosher applied for a groom's license in New York in 2011 and that his application was denied. Mosher testified that his appeal of this decision led to a protracted appeal process and, eventually, the March 25, 2014, letter rescinding the license denial and dismissing the appeal.

[¶6] Mosher also testified to the following. His license as a driver/trainer was suspended in New York for two years in 2001 after he failed to report the death of a horse. He never re-applied as a driver/trainer in New York. In 2004, he became licensed as a groom in New York. In 2006, he was caught improperly transferring medication from a veterinarian to a trainer and was convicted of a misdemeanor. His groom's license was not suspended based on this incident, but he did not renew the license in New York. He applied for re-licensure as a groom in 2011.[3] Despite this testimony, the Commission's deliberations focused on the 2011 license denial rather than on any other aspects of Mosher's character or licensing history.

---

[3]   Neither Mosher nor the Commission presented any evidence concerning the standards and procedures governing licensure and suspension of grooms and driver/trainers in New York.

[¶7]   The quorum of Commissioners in attendance unanimously voted to deny Mosher's application.  In an order dated August 29, 2014, the Commission found (1) that Mosher "was refused licensing by the State of New York," and (2) that he "did not introduce evidence sufficient to demonstrate that he is or was eligible for licensing in the State of New York subsequent to their December 16, 2011 refusal to license him."   The Commission stated, "Once refused a license an applicant must affirmatively show that they are or were subsequently eligible to be licensed by the entity that refused to license them," even if the license refusal subsequently "went away."  Therefore, the Commission concluded, "[b]ased on the New York State license refusal and the insufficiency of evidence showing that [Mosher] has been found eligible to be licensed in the State of New York, licensing under [§ 283] is not permissible."  Mosher filed a timely appeal with the Superior Court pursuant to Maine Rule of Civil Procedure 80C, and the court upheld the Commission's decision.  Mosher timely appealed to us.

## II.  DISCUSSION

[¶8]   We review the Commission's decision directly, without deference to the Superior Court's ruling.  *See Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 2, 985 A.2d 501.  "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  Although we ordinarily defer to an

6

agency's interpretation of a statute it administers, s*ee Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181, we must always consider whether a given interpretation is consistent with the legislative intent and avoids absurd, illogical, or inconsistent results, *see FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.,* 2007 ME 97, ¶ 12, 926 A.2d 1197.

[¶9]   Section 283's plain language, as well as the legislative history, indicates the Legislature's intent that the Commission treat an applicant similarly to how he or she has been treated by other jurisdictions.  *See Black's Law Dictionary* 1461 (10th ed. 2014) (defining "reciprocal" as "1. Directed by each toward the other or others; MUTUAL . . . 3. Corresponding; equivalent"); *see also* Testimony of Catharine Damren, Maine Association of Agricultural Fairs, on L.D. 622 before the Joint Standing Committee on Agriculture, Conservation and Forestry (Mar. 21, 2013) (stating that "[t]hose persons who are suspended or barred from participation [in harness racing] by another jurisdiction should not be licensed to participate in Maine until such time as all suspensions and revocations are cleared or served to the satisfaction of the jurisdiction where the suspension or revocation was issued").

[¶10]   The Commission acknowledged the March 25, 2014, letter and did not dispute that the New York Commission's decision to rescind its license denial

meant that the "license refusal went away."[4]  In this light, the Commission's interpretation that the licensing statute requires it to deny a license application based on a license denial in another jurisdiction that has been subsequently rescinded is contrary to the legislative intent of ensuring that an applicant is treated similarly in all jurisdictions.

[¶11]  Because the Commission appears to have relied entirely on New York's rescinded denial, which we have determined cannot form the basis for its licensing decision, we must vacate the decision and remand for further proceedings consistent with this opinion.

The entry is:

> Judgment vacated.  Remanded to the Superior Court with instructions to vacate the Commission's decision and remand to the Commission for further proceedings consistent with this opinion.

---

**On the briefs:**

William H. Childs, Esq., Childs, Rundlett, Fifield & Altshuler, LLC, Portland, for appellant Marc G. Mosher

Janet T. Mills, Attorney General, and Ronald O. Guay, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State Harness Racing Commission

---

[4]  Because we discern no functional difference between a "license refusal" and a "license denial" in the present context, we use the terms interchangeably, as did the parties.

8

**At oral argument:**

William H. Childs, Esq., for appellant Marc G. Mosher

Ronald O. Guay, Asst. Atty. Gen., for appellee State Harness Racing Commission

Kennebec County Superior Court docket number AP-2014-69
For Clerk Reference Only